UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF THE STATE OF NEW YORK
————————————————————————X

2:15-cv-05969-JMA-SIL

DONNAY USA LIMITED,

       Plaintiff,


    -against-



DONNAY INTERNATIONAL S.A.,
INTERNATIONAL BRAND MANAGEMENT
LIMITED and BRANDS HOLDINGS
LIMITED,
       Defendants.
————————————————————————X


## MEMORANDUM OF LAW IN

## OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

## AND APPLICATION FOR PRELIMINARY INJUUNCTION

## AND SPECIFIC PERFORMANCE



Dated: Dec 15, 2015
    , New York


————————————————
Jerry Choe
Attorney for Plaintiff
48 Jericho Turnpike
Jericho NY 11753
917-880-5888
212-2024558
jerrychoe@msn.com

TABLE OF CONTENTS

INTRODUCTION  ………………………………………………………..……….1

JUDICIAL ESTOPPEL BARS
DISMISSAL ON FORUM SELECTION………………………………………,,,,,,..1

ALTERNATIVELY, PLAINTIFF HAS MADE A
PRIMA FACIE SHOWING OF JURISDICTION…………………………..………………3

ALTERNATIVELY, ENFORCEMENT OF THE FORUM CLAUSE IS
UNJUST ……………………………………………………………………4

ALTERNATIVELY ENFORCEMENT OF THE FORUM CLAUSE IS
INVALID FOR FRAUD AND
OVERREACHING……………………………………………………..………..5

ALTERNATIVELY,THE 2009 AGREEMENT JURISDICTION CLAUSE EXCLUDES
CRIMINAL AND TORT CLAIMS…………………………………………………6

RES JUDICATA IS AN AFFIRMATIVE DEFENSE
AND NOT A RULE 12 GROUND FOR DISMISSAL…………………………..………..8

ALTERNATIVELY, THE PRIOR ACTION INVOLVED
DIFFERENTFACTS……………………………………………………………10

ALTERNATIVELY, THE CLAIMS IN THE PRIOR CASE WERE
DIFFERENT…………………………………………………..…………………..11

ALTERNATIVELY PRIVITY IS A FACTUAL DETERMINATION
AND CANNOT BE ADJUDICATED NOW………………………………………13

ALTERNATIVELY, RES JUDICATA CANNOT DISMISS NOW
SINCE THERE ARE TORTS COMMITTED
AFTER THE PRIOR CASE WAS FILED . …………………….………………..14

THE COURT SHOULD GRANT THE APPLICATION FOR
EMERGENCY RELIEF FOR INJUNCTION
AND SPECIFIC PERFORMANCE OF THE CONTRACT…………………………………15

PLAINTIFF HEREBY REQUESTS A HEARING UNDER RULE 12(D)……………………….15

INTRODUCTION

I, Jerry Choe hereby declare under penalties of perjury and submit this opposition to defendants motion to dismiss under rule 12 of the FRCP.   Oral argument is requested on this motion.  In addition, because this court has jurisdiction on the grounds of judicial estoppel, the Order to show cause and preliminary injunction application which was removed from state court should be granted. Specific performance of the contract should also be granted.

JUDICIAL ESTOPPEL BARS
DISMISSAL ON FORUM SELECTION

Judicial estoppel prevents a party in a legal proceeding from taking a position contrary to a position the party has taken in an earlier proceeding. Simon v. Safelite Glass Corp., 128 F. 3d 68 – ( 2nd Circuit 1997)

"A party invoking judicial estoppel must show that (1) the party against whom the estoppel is asserted took an inconsistent position in a prior proceeding and (2) that position was adopted by the first tribunal in some manner" Mitchell v. Washingtonville Cent. School Dist., 190 F. 3d 1 – ( 2nd Circuit 1999) citing *Bates, 997 F.2d at 1038,* such as by rendering a favorable judgment,  *Maharaj v. Bankamerica Corp.,* 128 F.3d 94, 98 (2d Cir. 1997).[2]

Here, defendant has taken advantage of the jurisdiction of the NY Federal Court to obtain a final judgment against one defendant DONNAY INTERNATIONAL SA regarding the transfer of an internet domain name transfer.

In a similar case in the Sixth circuit, the defendants raised the forum selection clause to argue the court had no jurisdiction after it took advantage of the same court's jurisdiction in a prior proceeding---"We conclude that the Simonses are judicially estopped from enforcing the forum selection clause of Article 15.7(a) in this

1

manner. "Judicial estoppel forbids a party from taking a position inconsistent with one successfully and unequivocally asserted by the same party in a prior proceeding." . Great Earth Companies, Inc. v. Simons, 288 F. 3d 878 - Court of Appeals, 6th Circuit 2002 citing _United States v. Owens_, 54 F.3d 271, 275 (6th Cir.1995) (quotation omitted)"

In the prior DONNAY case, the defendants consented to jurisdiction in the District court, and waived the jurisdictional objection by failing to include it in their motion to dismiss. See FRCP rule 12h[1] District court assumed jurisdiction over the parties despite the forum selection clause which according to defendants places jurisdiction in the courts of England.  Defendants obtained a final judgment against one of the defendants on the limited issue regarding the domain name transfer. Defendants even now attempt to use this judgment to preclude claims of current and recurring torts, since the first complaint was filed, and damages against all parties and claims.

"The actions of the defendant may amount to a legal submission 705*705 to the jurisdiction of the court, whether voluntary or not." Thus, the failure to enter a timely objection to personal jurisdiction constitutes, under Rule 12(h)(1), a waiver of the objection." Insurance Corp. of Ireland v. Compagnie des Bauxites de Guinee, 456 US 694 - **(1982).**    Defendants could have but did not raise the argument that the district did not have jurisdiction because it wanted to take advantage of the court's jurisdiction.  They should be judicially estopped from taking a inconsistent position now. See Pegram v. Herdrich, 530 US 211 – (2000)[2]

---

1 (h) Waiving and Preserving Certain Defenses.
(1) When Some Are Waived. A party waives any defense listed in Rule 12(b)(2)–(5) by:
(A) omitting it from a motion in the circumstances described in Rule 12(g)(2); or
(B) failing to either:
(i) make it by motion under this rule; or
(ii) include it in a responsive pleading or in an amendment allowed by Rule 15(a)(1) as a matter of course.

2 (Judicial estoppel generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase. See Rissetto v. Plumbers & Steamfitters Local 343, 94 F. 3d 597, 605 (CA9 1996).) "[J]udicial estoppel. . ., applies to preclude a party from assuming a position in a legal proceeding inconsistent with one previously asserted. Judicial estoppel looks to the connection between the litigant and the judicial system while equitable estoppel focuses on the relationship between the parties to the prior litigation. Oneida Motor Freight, Inc. v. United Jersey Bank, 848 F. 2d 414 - Court of Appeals, 3rd Circuit 1"-" Scarano v. Central Railroad Co., 203 F.2d 510 (3d Cir.1953); USLIFE Corp. v. U.S. Life Insurance Co., 560 F.Supp. 1302 (N.D.Tex.1983).

2

## ALTERNATIVELY, PLAINTIFF HAS MADE A
## PRIMA FACIE SHOWING OF JURISDICTION

Even if judicial estoppel does not preclude the forum selection position,  plaintiff  has made a prima

facie showing of jurisdiction

> "[A]t the initial stage of litigation, a party seeking to establish jurisdiction need
> only make a *prima facie* showing by alleging facts which, if true, would support
> the court's exercise of jurisdiction.. When analyzing this preliminary showing, the
> facts must be viewed in the light most favorable to the plaintiff."

New Moon Shipping Co., Ltd. v. Man B & W Diesel Ag, 121 F. 3d 24 – (2nd Circuit 1997)[3]

In order to escape the contractual clause,  must show "that trial in the contractual forum will be

so gravely difficult and inconvenient that he will for all practical purposes be deprived of his day in

court." M/S Bremen, 407 U.S. at 18, 92 S.Ct. at 1917.

Here the willful and wanton  destruction of the business caused unforeseeable damage to the

company and its majority principal, namely me, who has put all his money and 8 years of his life, so

much that the problems and damage caused by defendants have prevented me from appearing in the

district court and properly prosecuting that claim.  In fact, I am not a litigating attorney nor do I have

much experience in court. I did ask the district court for time for me to find counsel to represent me and

the company but I could not afford an attorney and I was not in well health to proceed myself, especially

living in despair.  I had virtually no prior experience litigating cases.

The defendants actions of destroying the business has affected my life so dramatically and has

left me with very few resources to litigate this case, no less to hire attorneys to litigate in a foreign forum

---

3 "A disputed fact may be resolved in a manner adverse to the plaintiff only after an evidentiary hearing. Because the same risk of loss of plaintiff's chosen forum may
be at issue in the forum selection context, a party seeking to avoid enforcement of such a contractual clause is also entitled to have the facts viewed in the light most
favorable to it, and no disputed fact should be resolved against that party until it has had an opportunity to be heard."Id

such an England where the cost of attorneys are even higher than the US.  I will not be able to litigate in England.   I am the only person in the company now, other than one porter, and I have to run every aspect of the business alone.  The only chance I have to litigate the continuing wrongs that were done and are still being done to me is in this forum where I can only do the best I can with the dearth of resources I have.  Since I have no resources to litigate elsewhere, and I will be deprived of by day in court if the forum were changed.  I have put all my money, risked my family, and have been living in despair and destruction for the past 3 years as a result of the continuing damage which has been done by defendants.  I have spent millions of dollars and over 8 years of my life building this business and now I am spending everyday  mitigating the daily destruction which is still occurring for every day the defendants does not remedy the damage they have done and the continuous acts they continue to do to destroy the business.

Last year I sold my house and spent and lost over 1 million dollars over the past year to keep the business even alive. These are real, direct,  proveable and concrete damages done as a direct result of the tortious actions of defendants. I am at the point where now the business is at the crux of failing and personally I have exhausted all resources.. I could not afford to retain counsel and I had no prior experience litigating in federal court. The stress has caused me ill health which is why I was not able to properly litigate the previous case or respond or even appear in the district court in the prior case.[4]

There is an application for emergency relief before this court.  It was made by way of an application for an order to show cause in the state court.  It asked for a preliminary injunction against IBML and its president Neil Morton from taking further acts in destruction of the business.  I am pleading for this court to grant this preliminary injunction now.

ALTERNATIVELY, ENFORCEMENT OF THE FORUM CLAUSE IS UNJUST

---

[4] "Plaintiff has not opposed, or otherwise responded to the motion, nor sought an extension of time to do so". Donnay usa ltd v. Donnay International SA, 2:14-cv-06095 (EDNY 2015)  In fact, defendants did not even seek a dismissal with prejudice.

A forum selection clause is unenforceable "if it is shown that to enforce it would unreasonable or unjust, or that the clause was invalid for such reasons as fraud or overreaching." Phillips v. Audio Active Ltd., 494 F. 3d 378 - Court of Appeals, 2nd Circuit 2007 citing M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 15, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972),- NY METRO RADIO KOREA, INC. v. KOREA RADIO USA, INC., ( ED NY 2008),  Bank of America, NA v. Hensley Properties, LP, , 495 F. Supp. 2d 435 – (SDNY 2007)("Under the circumstances of this case, the Court finds that enforcement of the forum-selection clause would be "unreasonable and unjust."), New Moon Shipping Co., Ltd. v. Man B & W Diesel Ag, 121 F. 3d 24 – (2nd Circuit 1997 )

In this case, the enforcement of the forum selection clause would be unjust and the clause is invalid. Enforcement is unjust because the total destruction of the business was **wanton and willful and intentional damage** and done with **actual knowledge** that any termination was improper and **actual knowledge** of Article 17.8 which provides for an automatic non-exclusive license in the event of any legal dispute between the parties.[5]  This willful destruction done by IBML and Brands Holding, has deprived me of the resources to litigate in the foreign country.

## ALTERNATIVELY, ENFORCEMENT OF THE FORUM CLAUSE
## IS INVALID FOR FRAUD AND OVERREACHING

The clause and the supplemental agreement is also invalid because it was obtained by fraud and was overreaching as alleged in the complaint.   As the complaint alleges,  the supplemental contract was a contract of adhesion, overreaching, induced by fraud and threats.[6] The actions by Neil Morton, president of defendant

---

[5] Article 17.8of the 2009 agreement judiciously provides in clause 17.8 that **IN THE EVENT OF A LEGAL DISPUTE THE "GRANT SHALL AUTOMATICALLY BE AMENDED TO BECOME NON-EXCLUSIVE".**

[6] §175. WHEN DURESS BY THREAT MAKES A CONTRACT VOIDABLE  (1) If a party's manifestation of assent is induced by an improper threat by the other party that leaves the victim no reasonable alternative, the contract is voidable by the victim.

IBML were coercive and fraudulent respecting the supplemental agreement.  He told plaintiffs  "Sign the F----g thing now or else we are terminating. We will sit down and discuss things afterwards".  "We will settle everything afterwards".  The "afterwards" never came.  I went to see Mr Morton on a number of occasions over the next several months and I asked how he intends to settle the issues and he never had an answer.  He obviously never intended to settle the issues. He knew we could not make those kinds of payments and he induced us to sign the document with threats and fraud.  Mr Morton President of IBML misrepresented to us a material fact and through this deception caused injury.  DiRose v. PK Management Corp., 691 F. 2d 628 – ( 2nd Circuit 1982)

Eventually when I realized no such settlement was going to occur, I did repudiate the contract. I then told Mr Morton that the supplemental agreement could not be adhered to.  Moreover, that supplemental agreement  was voluntarily terminated by IBML by letter dated January 2013.. [7]

## ALTERNATIVELY, THE 2009 AGREEMENT JURISDICTION CLAUSE EXCLUDES CRIMINAL AND TORT CLAIMS

Under New York law, "[i]n cases of doubt or ambiguity, a contract must be construed most strongly against the party who prepared it and favorably to a party who had no voice in the selection of its language."  Revson v. Cinque & Cinque, PC, 221 F. 3d 59, 68 - Court of Appeals, 2nd Circuit 2000 , *United States* v. *Seckinger,* 397 U. S. 203, 210 (1970). Respondents drafted an ambiguous document, and they cannot now claim the benefit of the doubt. The reason for this rule is to protect the party who did not choose the language from an unintended or unfair result.[10] Mastrobuono v. Shearson Lehman Hutton, Inc., 514 US 52  ( 1995).

---

7 The letter refers to "Trade Mark Licence Agreement  dated  29 May 2012  between Donnay International SA ('Donnay'), International Brand Management Limited, Brands Holdings Limited,  and  Donnay USA  Limited ('Donnay  USA') as amended ('Agreement')., not the 2009 agreement, another ambiguity which is construed against the drafter.

The Second Circuit in  Phillips v. Audio Active Ltd., 494 F. 3d 378 – ( 2nd Circuit 2007) stated

> " Further, we approve of the approach outlined by the Third Circuit, which highlights the language-specific nature of this inquiry and discounts the precedential weight of cases that deal with dissimilarly worded clauses." Phillips v. Audio Active Ltd., 494 F. 3d 378 - Court of Appeals, 2nd Circuit 2007---Id. ("arise out of" means "to originate from a specified source,") [8]

Here the original contract of 2009 was intended to exclude **some disputes** (not cover "any disputes") and exclude "non-contractual claims" such as tort and criminal activity.

> "This Agreement shall be governed by and construed in accordance with the laws of England and the parties for this purpose hereby submit to the exclusive jurisdiction of the courts of England."

The Supplemental agreement of 2012  significantly broadened the scope to cover "any dispute"  and added non-contract claims:

> "This deed and <u>any dispute or claim arising out of or in connection with it or its subject matter of formation (including non-contractual disputes or claims)</u> shall be governed by and construed in accordance with the laws of England and Wales and the parties for this purpose hereby submit to the exclusive jurisdiction of the courts of England and Wales."(emphasis added)

The 2009 Agreement's forum selection specifically omits "Non-contractual claims and disputes".  The supplemental agreement, which was terminated by letter dated January 2013, broadened the scope of what claims would be covered by the forum selection clause.  The fact that "any dispute or claim arising out of or in connection with" and  "non-contract disputes and claims" were added to the 2012 Amendment means that tort and criminal claims were excluded from the 2009 agreement by implication.[9]

In New Moon Shipping Co., Ltd. v. Man B & W Diesel Ag, 121 F. 3d 24 - Court of Appeals, 2nd Circuit 1997, plaintiff brought claims *inter alia* a tort claim related to an underlying contractual

---

[8] "We do not understand the words "arise out of" as encompassing all claims that have some possible relationship with the contract, including claims that may only "relate to," be "associated with," or "arise in connection with" the contract.  Webster's Third New International Dictionary 117 (1981); see Coregis Ins. Co. v. Am. Health Found., Inc., 241 F.3d 123, 128 (2d Cir.2001), and generally indicates a causal connection, Coregis, 241 F.3d at 128.

9 Restatement 2nd of contracts- §216.
d. Terms omitted naturally. If it is claimed that a consistent additional term was omitted from an integrated agreement and the omission seems natural in the circumstances, it is not necessary to consider further the questions whether the agreement is completely integrated and whether the omitted term is within its scope, although factual questions may remain.

7

relationship which provided for exclusive jurisdiction in Germany.  The defendant moved to dismiss on the forum selection clause. The Second Circuit held that an evidentiary hearing on forum selection should be determined once plaintiff has made a prima facie showing of jurisdiction.  Id.

The court held that in determining jurisdiction, "A disputed fact may be resolved in a manner adverse to the plaintiff only after an evidentiary hearing" Id.

"When the meaning of a contract is litigated, a reviewing court ordinarily looks only at the words used by the drafters, who presumably understood what they intended. Where the language used creates an ambiguity, a reviewing court must permit the receipt of evidence in order to see what was in the drafters' minds." Seiden Associates, Inc. v. ANC Holdings, Inc., 959 F. 2d 425 – ( 2nd Circuit 1992). "If ambiguity is found, it must be resolved — as well as all inferences drawn — against the moving party, which has the burden of establishing that no facts material to the outcome of the litigation are in dispute."Id.

Here the defendants drafted both the Original agreement 2009 and the Supplement Agreement of 2012 and they are the party moving to dismiss.  Since it is ambiguous whether the Original agreement intended to exclude tort and criminal claims, the ambiguities should be construed against them and in favor of plaintiff.

If judicial estoppel does not bar the forum selection, the district court here should hold evidentiary hearings to determine whether the original forum selection clause includes criminal and tort claims.  See See FRCP 12 (i) [10] TradeComet. Com LLC v. Google, Inc., 693 F Supp 2nd 370 (SDNY 2010) ("The scope of the forum selection clause is a contractual question that requires the courts to interpret the clause and, where ambiguous, to consider the intent of the parties."-)

RES JUDICATA IS AN AFFIRMATIVE DEFENSE
AND NOT A RULE 12 GROUND FOR DISMISSAL.

---

10 " Hearing Before Trial. If a party so moves, any defense listed in Rule 12(b)(1)–(7)—whether made in a pleading or by motion—and a motion under Rule 12(c) must be heard and decided before trial unless the court orders a deferral until trial."

8

*"Res judicata* and collateral estoppel are **affirmative** defenses that must be pleaded, .[11]"*Blonder-Tongue*

*Laboratories, Inc. v. University of Ill. Foundation*, 402 U.S. 313, 91 S. Ct. 1434, 28 L. Ed. 2d 788 (1971).

Federal Rules of Civil Procedure Rule 8(c).

There is a very narrow judicial notice exception to Rule 8 in Sect 1983 false arrest cases against law

enforcement officials.  " When all relevant facts are shown by the court's own records, of which the court takes

notice, the defense may be upheld on a Rule 12(b)(6) motion without requiring an answer.  <u>Day v. Moscow</u> .

Even in the <u>Day v Moscow</u> case the second circuit was very careful to preclude claims against each defendant

for each claim individually.

<u>Monahan</u> allowed res judicata on summary judgment under rule 56 after pleadings. Monahan v. New

York City Dept. of Corrections, 214 F. 3d 275 – (2nd Circuit 2000).. (" *[R]es judicata* is an affirmative defense

that should be raised in the defendant's answer, the district court has the discretion to entertain the defense when

it is raised in a motion for summary judgment , by construing the motion as one to amend the defendant's

answer." [12]

Defendants cite <u>Starr v. Georgeson</u> and <u>Calemine v Gesell</u> as stating "in considering a motion to dismiss

under rule 12(b)6) based on res judicata,"  when neither of those cases involved res judicata at all. See

Defendants brief  1B p12. *<u>Starr v. Georgeson S'holder, Inc.,</u> 412 F.3d 103, 109 (2d Cir.2005)*; *Calemine v.*

*Gesell,* No. 06 CV 4736 (SJ) (RM), 2007 WL 2973708, at *1 n.1 (E.D.N.Y. Sept. 28, 2007);

---

11 FRPC 8c reads-"In pleading to a preceding pleading, a party shall set forth affirmatively . . .res judicata. . . and any other matter constituting an . . . affirmative defense. " " The purpose of such pleading is to give the opposing party notice of the plea of estoppel and a chance to argue, if he can, why the imposition of an estoppel would be inappropriate." <u>Blonder</u> at 350.

[12] "This approach subtly alters the structure dictated by Rules 8(c) and 15(a) in two ways. First, it apparently relieves the moving party of the need to request amendment, and the District Court of the need to state and explain its grant of leave to amend, so long as the opposing party does not show prejudice. This change allows parties to omit **affirmative** defenses in pleadings strategically, in violation of the notice purpose." Harris v. Secretary, US Dept. of Veterans Affairs, 126 F. 3d 339 - Court of Appeals, Dist. of Columbia 1997

Defendants also cite Kramer v. Time Warner Inc., 937 F. 2d 767 – (2nd Circuit 1991), which also which did not involve res judicata.  In none of the cases did the court grant res judicata on a motion to dismiss as here with different parties, different facts, and without a full evidentiary record.

ALTERNATIVELY,  THE PRIOR ACTION INVOLVED DIFFERENT FACTS

Whether a claim that was not raised in the previous action could have been raised therein "depends in part on whether the same transaction or connected series of transactions is at issue, and whether the same evidence is needed to support both claims." _Interoceanica Corp. v. Sound Pilots, Inc.,_ 107 F.3d 86, 90 (2d Cir.1997) . "To ascertain whether two actions spring from the same `transaction' or `claim,' we look to whether the underlying facts are `related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage.'"

The operative facts in this prior action related to acts by Everlast worldwide regarding only the internet domain transfer of donnayusa.com (see Exhibit A)

> Promises and representations were made by licensor that the domain name servers would not be touched and administrative control would remain with the licensee. Substantial reliance was foreseeable by the promisor. In reliance on this promise, the licensee allowed the licensor to submit a domain transfer request. A request never came from licensee.  Instead, a request came from a third party named Everlast Worldwide who is not the licensor and has no privity with the licensee.  Such request was forwarded to many individuals because the origination of the transfer was unknown.  Accidentally one of those individuals clicked a button which completed the transaction not knowing that such would be the result. The transfer was unintentional, in error, and unauthorized.
> Immediately a error report was made to the registrant Network Solutions to claim back the domain. In the interim, the Everlast Worldwide effectuated a change of domain name server which in breach of the licensor's promise, contract and which caused representations by the licensor to become a fraud.  Such change shut down the www.donnayusa.com website and the largest asset and goodwill of plaintiff and the driving engine of the business

This current complaint describes tortious acts of  Defendant International Brands Management Limited(" IBML") much of which are recurring and continuous torts:

10

Paragraph 31 of the complaint.  Describes the tortious action done by defendant IBML in destroying the customer relationship of plaintiff's largest customer.[13] This was done with actual knowledge that article 17.8 granted an automatic nonexclusive license. Paragraph 32.  Describes the tortious action done by defendant IBML to contact one of the manfacturers for plaintiff to tortiously destroy that relationship. Paragraph 35. Describes acts by IBML to try to seize goods.

> "33. This has choked off sales which were major profit centers.  The inability to keep those sites up and running has literally obliterated our public face. This has choked off internet sales which were major profit centers.  The inability to keep those sites up and running has literally obliterated our public face. We get calls and E-mails and calls from customers asking if we are still in business.  The orders from such internet disruption has reduced sales by millions of dollars.
> 34.  The illegal acts of the plaintiffs have gravely injured the plaintiff in its reputation and business and continue to do so. "

The facts and claims in the prior action was against one defendant Donnay International SA and only alleged facts and damage relating to improper transfer of the internet domain www.donnayusa.com.  The current facts relate to the tortious acts of IBML to intentionally destroy the business by defaming plaintiff knowing that the termination was illegal and with actual knowledge that article 17.8 provided for an automatic nonexclusive license.

### ALTERNATIVELY,  THE CLAIMS IN THE PRIOR CASE WERE DIFFERENT

> That both suits involved `essentially the same course of wrongful conduct' is not decisive. Such a course of conduct ... may frequently give rise to more than a single cause of action.... While the [prior] judgment precludes recovery on claims arising prior to its entry, it cannot be given the effect of extinguishing claims which did not even then exist and which could not possibly have been sued upon in the previous case.

Lawlor v. Nat'l Screen Serv. Corp., 349 U.S. 322, 327-28, 75 S.Ct. 865, 99 L.Ed. 1122 (1955).

Every claim in this prior case was about the transfer of the domain www.donnayusa.com(see exhibit A):

> CLAIM #1: The first claim requested s declaratory judgment that "the domain registration transfer of www.donnayusa.com is should be null and void." See complaint para 17

---

[13] The licensor sent a letter to one of licensee's major customers, Tennis Warehouse, alleging that the license a had been terminated and that Tennis Warehouse was illegally dealing in the licensor's product. It disparaged licensee's business reputation. T e n n i s  Warehouse has put our account "on hold" pending resolution between the licensor and licensee. .

11

CLAIM#2: The second claim for fraud alleged ".Defendants have knowingly made representations that once a domain transfer was complete, no DNS changes would be made, knowing that such representations were false and misleading and only to cause licensee to transfer the domain." Exbihit A Complaint para 19

CLAIM#3: The third claims for promissory estoppel alleged" Defendants   have made promises not to change the domain name server  knowing that plaintiffs would substantially rely on such promises and that breach of the promise would cause substantial detriment in that the largest asset of the business is the domain www.donnayusa.com.. Plaintiff did in fact rely on those promises by allowing defendant to cause a third party to submit a domain transfer request which was unintentionally and without authority accidentially completed" Exhibit A complaint  para 22

CLAIM#4: The forth claims for negligent misrepresentation" Defendant was negligent in misrepresenting to plaintiff that the domain name servers would not be changed.
Plaintiff relied on such negligent misrepresentation to his detriment in that now the domain is in the hands of a third party with no privity to the plaintiff and therefore having to control or influence over the domain. Exhibit A complaint at para 26
"
CLAIM#5: The Fifth claim was for tortious interference as it related only to the domain donnayusa.com" Defendants have intentionally, knowingly,  and by wrongful means interfered with contacts in existence among plaintiff and manufacturers, suppliers, vendors and customers  which has caused the cancellation  of those contracts by causing a "shutdown" of the website.  "

In other words, that complaint alleged facts and activity of causing the shutdown of the website.  It did not allege the numerous tortious acts including the direct tortious destruction of relationships of customers and suppliers. .  Even the tort claim of interference only alleged interference relating to "the shutdown of donnayusa.com."  It did not set forth the acts of IBML and how they destroyed the business relationships of plaintiff.

This complaint on the other hand,  alleges:

CLAIM #1.     Declaration that the trademark license is in full force and effect, and that the supplemental agreement is void.

CLAIM #2.     Defamation before and after the last case was filed,

CLAIM #3.     Tortious interference with prospective advantage on the basis of tortious acts by defendant IBML which caused the direct loss of the largest customer and distributor in the industry, tenniswarehouse.

CLAIM #4.     Tortious interference with existing contracts- and direct loss of supply relationships which cause a direct and calculable losses to plaintiff.

CLAIM #5.     Toritous destruction of goodwill, knowing article 17.8 called for an automatic conversion to a nonexclusive licensing agreement.

This complaint spells out the tortious acts of IBML and how they destroyed plaintiffs' business relationships.

## ALTERNATIVELY, PRIVITY IS A FACTUAL DETERMINATION
## AND CANNOT BE ADJUDICATED NOW

"There must be both an identity of parties and an identity of issues between the prior and subsequent suits before operation of the res judicata doctrine is triggered. Where a subsequent suit is based on a different cause of action, the principle of collateral estoppel renders the prior judgment conclusive only as to matters necessarily litigated and determined in the prior proceeding. The threshold requirement of identity of parties, qualified by the doctrine of privity, finds its roots in the ancient notion, now supplemented by the due process clause, that a person cannot be bound by a judgment without notice of a claim and an opportunity to be heard. Whether such identity is evident is a factual determination of substance, not mere form."

Expert Electric, Inc. v. Levine, 554 F. 2d 1227,1233 - Court of Appeals, 2nd Circuit 1977.

This due process concern does not exist here because the defendants are not claiming that the current case involves new plaintiffs in privity prior plaintiffs.   See Monahan v. New York City Dept. of Corrections, 214 F. 3d 275 – ( 2nd Cir 2000 ) ( " previous action involved the plaintiffs or those in privity with them.)

Here the parties in the prior action are different. The previous case was brought only against Donnay International SA and it claimed only the wrongful actions of Everlast worldwide, the named owner of the domain www.donnayusa.com.  The due process concern does not exist as to the new defendants.

"Whether or not the first judgment will have preclusive effect depends in part on whether the same transaction of series of transactions is at issue, whether the same evidence is needed to support both claims, and whether the facts essential to the second were present in the first." NLRB v. United Technologies Corp., 706 F.2d 1254, 1260 (2d Cir. 1983)

Here the facts and evidence needed to support the prior claim is clearly distinct from those in the current action because the prior case only involved the transfer of the domain www.donnayusa.com.

"But one general limitation the Court has repeatedly recognized is that the concept of collateral estoppel cannot apply when the party against whom the earlier decision is asserted did not have a

13

"full and fair opportunity" to litigate that issue in the earlier case." Allen v. McCurry, 449 US 90, 95 - Supreme Court 1980.

Here, the defendants' total destruction of the business caused personal financial destruction and health issues which crippled me prevented me from adequate counsel and representation in the prior case.  This leaves me without the financial  means or physical ability to litigate in a foreign jurisdiction. It was not foreseeable at the time of contract that defendants would destroy the business and the only means of livelihood for myself and the plaintiff wherein I am the sole person now running the entire business.

If this court permits res judicata under rule 12, there should be an evidentiary determination of privity.  See Expert Electric, Inc. v. Levine, 554 F. 2d 1227 - Court of Appeals, 2nd Circuit 1977  (" the claims at issue in the Prior Actions and the claims asserted in the current action are plainly distinct.")

### ALTERNATIVELY, RES JUDICATA CANNOT DISMISS NOW SINCE THERE ARE TORTS COMMITTED AFTER THE PRIOR CASE WAS FILED .

"Claims arising subsequent to a prior action need not, and often perhaps could not, have been brought in that prior action; accordingly, they are not barred by res judicata regardless of whether they are premised on facts representing a continuance of the same "course of conduct":" Storey v. Cello Holdings, LLC, 347 F. 3d 370 - Court of Appeals, 2nd Circuit 2003.  "While the [prior] judgment precludes recovery on claims arising prior to its entry, it cannot be given the effect of extinguishing claims which did not even then exist and which could not possibly have been sued upon in the previous case.  TECHNOMARINE SA v. Giftports, Inc., 758 F. 3d 493 - Court of Appeals, 2nd Circuit 2014 citing Lawlor v. Nat'l Screen Serv. Corp., 349 U.S. 322, 327-28, 75 S.Ct. 865, 99 L.Ed. 1122 (1955). See also The Flaherty v. Lang, 199 F. 3d 607 – ( 2nd Circuit 1999).

Here, there have been continuing torts committed many of which occurred after the prior case was filed including contact with plaintiff's largest customers and therefore cannot be res judicata. Part of this application for emergency relief is because defendants threatened to seize goods and did in fact recently send people to the warehouse of plaintiff.  The tortious seizure of product is what has provoked the current pending application for

14

emergency relief which is now pending before this court. Other continuing tortious actions by IBML after the first case was filed involves suppliers and third party vendors not involved before the prior case of the filed.

Alternatively, even if the court believes there are common facts, claims, and parties, the prior case cannot preclude injunctive relief for acts which did not even occur since after the prior case began.

Defendants have, since the prior lawsuit was filed, acted to contact customers, and suppliers, seize goods, and direct internet traffic away from plaintiff, take internet traffic away from plaintiff, take business and customers away via internet google searches. These are recurring and continuing torts.

## THE COURT SHOULD GRANT THE APPLICATION FOR INJUNCTION
## AND SPECIFIC PERFORMANCE OF THE CONTRACT

The original application which started an application for emergency relief to prevent continued destruction of the business of plaintiff.  Defendants threatened to seize  goods and defendents IBML sent people to the warehouse of plaintiff.  Since the court has jurisdiction, the application for emergency relief is before this court and must be granted immediately.  There is no adequate remedy at law since this is an ongoing contract and continuing unascertainable damages occur and continuing torts occur.  This court should issue an injunction and specific performance of the contract .  Damages are inadequate because this is an ongoing concern and everyday the breach is not remedied it is causing unascertainable damage to the goodwill of the business.

> Before specific performance may be ordered, remedies at law first should be determined to be incomplete and inadequate to accomplish substantial justice. The fact that there is a remedy at law, however, does not preclude equitable relief.  We agree with the district court that substantial justice could not be achieved here without specific performance." Leasco Corporation v. Taussig, 473 F. 2d 777, 786 – ( 2nd Circuit 1972)

PLAINTIFF HEREBY REQUESTS A HEARING UNDER RULE 12(D)[14]

---

[14] Preliminary Hearings.Rule 12(D) states :"The defenses specifically enumerated (1)-(7) in subdivision (b) of this rule, whether made in a pleading or by motion, and the motion for judgment mentioned in subdivision (c) of this rule shall be heard and determined before trial on application of any party, unless the court orders that the hearing and determination thereof be deferred until the trial."

# EXHIBIT A

09/18/2014  05:09    5165712753                                    PAGE  06/12

SUPREME COURT OF THE STATE OF NEW YORK COUNTY OF NASSAU

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

DONNAY USA LTD,                                    Index No.

                    Plaintiff,

-against-                                          SEALED

                                                   COMPLAINT

DONNAY  INTERNATIONAL  S.A.,

                    Defendant.


- - - - - - - - - - - - - - - - - - - - - - - - - - - x


Plaintiff, by its attorney, Jerry Choe, as and for its Complaint, alleges as follows:

1.     Plaintiff, Donnay USA Limited (the "licensee") is a corporation organized and existing under the laws of the State of New Jersey with a place of business in Nassau County New York.


2.     Upon information and belief, defendant, Donnay International S.A., (the "licensor") is a corporation organized and existing under the laws of Belgium with a place of business at Avenue Ernest Solvan, 29, B1480 Saintes, Belgium.

6.     On March 25, 2009, the licensor entered into a 20 (Twenty) year exclusive master licensing agreement (the "Exclusive Master Agreement") with the plaintiff licensee essentially for the master licensing of the trademark known as "DONNAY" with exclusivity for much of the world.

09/18/2014  05:09   5165712753                                          PAGE  07/12

7.      Under paragraph 2.52 of the Licensing Agreement, the licensee was to be grant administrative control to the domain www.donnayusa.com.

8.      In compliance with its obligations under the Licensing Agreement, the licensee established a business plan, promoted the distribution and sale of products employing the DONNAY trademark expending over $5 million in advertising the brand, arranged for the manufacture of the Product in China and elsewhere, investigated possible distribution channels, maintained an inventory of Products (mostly tennis racquets and related items) at levels appropriate and adequate for plaintiff to meet its reasonable customer delivery requirements for Product throughout its assigned territory, and surveyed and undertook measures for the marketing and sale of the Product on the internet.

9.      In the process, plaintiff used all reasonable endeavors to comply with with the instructions of the licensor and to discharge its contractual responsibilities.

10.     The parties were fully aware that the undertakings of plaintiff were extensive, far-reaching, time-consuming and very expensive in order to establish a viable business in the vast territory allotted to it under the Licensing Agreement.

11.     Licensee performed the enormous tasks, aided by personal and outside investments in the millions of dollars which were devoted to building the business over the past years.

12.     Disagreements ensued and the relationship began to sour. With the Licensing Agreement in effect, the Licensor has acted in extreme bad faith by disparaging licensee's business, tortiously interfering with licensee's active and prospective business relations and tortiously interfering with its prospective economic advantages. The parties sought out and tried to work out a number of different relationships.

13. The exclusive master Licensing Agreement provided that under certain circumstances the master exclusive license agreement would be downgraded a "non-exclusive", "non-master" instead of an "exclusive" master.

14. In drafting the master license agreement, it was clear that it contemplated a conversion to a non-exclusive, non-master license. This conclusion only makes sense because the Licensing Agreement contemplated a long term twenty year, heavily-invested scenario in the brand which was performed by licensee and parties around the world, over $5 million and 5 years.

15. On or about May 2014, under a new relationship and nonexclusive non-master license, the licensor is was to continue to allow the DNS control of the domain to the licensee in exchange for a transfer of the domain www.donnayusa.com. Promises and representations were made by licensor that the domain name servers would not be touched and administrative control would remain with the licensee. Substantial reliance was foreseeable by the promisor. In reliance on this promise, the licensee allowed the licensor to submit a domain transfer request. A request never came from licensee. Instead, a request came from a third party named Everlast Worldwide who is not the licensor and has no privity with the licensee. Such request was forwarded to many individuals because the origination of the transfer was unknown. The request was complete unsecure, required no login, and was a one click transaction. Accidentally one of those individuals clicked a button which completed the transaction not knowing that such would be the result. The transfer was unintentional, in error, and unauthorized.

09/18/2014   05:09    5165712753

PAGE   09/12

Immediately a error report was made to the registrant Network Solutions to claim back the domain. In the interim, the Everlast Worldwide effectuated a change of domain name server which was in breach of the licensor's promise, contract and which proved representations by the licensor to become a fraud. Such change shut down the www.donnayusa.com website and the largest asset and goodwill of plaintiff and the driving engine of the business.

## FIRST CAUSE OF ACTION FOR A DECLARATORY JUDGMENT

16.    Repeats and realleges each and every allegation contained in paragraphs1 through 15 with the same force and effect as if fully set forth herein.

17.    By reason of the foregoin, the domain registration transfer of www.donnayusa.com should be declared null and void.

## SECOND CAUSE OF ACTION FOR FRAUD

18.    Repeats and realleges each and every allegation contained in paragraphs1 through 15 with the same force and effect as if fully set forth herein.

19.    Defendants have knowingly made representations that once a domain transfer was complete, no DNS changes would be made, knowing that such representations were false and misleading and only to cause licensee to transfer the domain.

09/18/2014   05:09   5165712753                                                    PAGE   10/12

20.   By reason of the foregoing, defendant should be subject to punitive damages in the sum of One Billion ($1,000,000,000) Dollars.

## THIRD CAUSE OF ACTION FOR PROMISSORY ESTOPPEL

21.   Repeats and realleges each and every allegation contained in paragraphs 1 through 15 with the same force and effect as if fully set forth herein.

22.   Defendants have made promises not to change the domain name server knowing that plaintiffs would substantially rely on such promises and that breach of the promise would cause substantial detriment in that the largest asset of the business is the domain www.donnayusa.com. Plaintiff did in fact rely on those promises by allowing defendant to cause a third party to submit a domain transfer request which was unintentionally and without authority accidentally completed.

23.   By reason of the foregoing, defendant should be estopped and enjoined from contesting the cancellation of the transfer. Defendants should also be enjoined to further interfering with plaintiff's business.

## FOURTH CAUSE OF ACTION FOR NEGLIGENT MISREPRESENTATION

24.   Repeats and realleges each and every allegation contained in paragraphs

25.   Defendant was negligent in misrepresenting to plaintiff that the domain name servers would not be changed.

09/18/2014   05:09      5165712753                                    PAGE   11/12

26. Plaintiff relied on such negligent misrepresentation to his detriment in that now the domain is in the hands of a third party with no privity to the plaintiff and therefore having to control or influence over the domain.

FOURTH CAUSE OF ACTION FOR INTERFERENCE WITH EXISTING CONTRACTS

27.     Repeats and realleges each and every allegation contained in paragraphs

28.     Defendants have intentionally, knowingly, and by wrongful means interfered with contacts in existence among plaintiff and manufacturers, suppliers, vendors and customers which has caused the cancellation of those contracts by causing a "shutdown" of the website.

29.     By reason of the foregoing, defendant should be liable for punitive damanges in the sum of One Billion ($1,000,000,000) Dollars.

WHEREFORE, plaintiff demands judgment for a declaratory judgment that the Domain belongs to plaintiff, for punitive damages of $2,000,000,000 Two Billion dollars and for an injunction estopped from protesting the recovery of the domain, a preliminary injunction and permanent injunction under CPLR 6301 because defendantrs must be restrained from the commission or continuance of acts, which, if committed or continued during the

09/18/2014  05:09    5165712753                                    PAGE  12/12

pendency of the action, would and have produced injury to the plaintiff and by reason of the fact

that immediate and irreparable injury, loss or damage has and will result unless the defendants

and plus the applicable interest and the costs and disbursements of this action.

Attorney for Plaintiff

Jerry Choe

5 E 22nd st #25p

New York NY 10010

Tel:    (917) 880-5888

Fax:    (630)839-6092

Email: jerrychoe@msn.com

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF THE STATE OF NEW YORK
———————————————————————X

2:15-cv-05969-JMA-SIL

DONNAY USA LIMITED,

        Plaintiff,

**DECLARATION OF SERVICE**

  -against-

DONNAY INTERNATIONAL S.A.,
INTERNATIONAL BRAND MANAGEMENT
LIMITED and BRANDS HOLDINGS
LIMITED,
        Defendants.
———————————————————————X

I, Jerry Choe, declare under penalty of perjury as follows:

1.  I am an attorney for plaintiff.  On December 17, I served true copies of the Plaintiff's Opposition to

    Defendants' Motion to Dismiss upon the Defendants via certified mail, return receipt requested, address

    to the defendants' attorney of record at:

        Robert Sacoff

        Pattishall, Mcauliffe

        200 south wacker Dr suite 2900,

        Chicago IL 60606

And also by email to rsacoff@pattishall.com

December 17, 2015

_____

Jerry Choe