UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------X
DONNAY USA LIMITED,

                                        Plaintiff,

                        -against-

DONNAY INTERNATIONAL S.A.,
INTERNATIONAL BRAND MANAGEMENT
LIMITED, BRANDS HOLDINGS LIMITED,

                                        Defendants.
--------------------------------------------------------------X

For Online Publication Only

**MEMORANDUM & ORDER**
15-CV-5969 (JMA) (SIL)

FILED
CLERK

9/1/2016 1:15 pm

U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

**APPEARANCES:**

Jerry Choe
48 Jericho Turnpike
Jericho NY, 11753
        *Attorney for Plaintiff*

Robert W. Sacoff
Seth I. Apple
Pattishall, McAuliffe, Newbury, Hilliard & Geraldson LLP
200 S. Wacker Drive, Suite 2900
Chicago, Illinois 60606

Anthony DiPaolo
Anthony DiPaolo, P.C.
235-07 Braddock Avenue
Queens Village, New York 11428
        *Attorneys for Defendant*

**AZRACK, United States District Judge:**

        Plaintiff Donnay U.S.A. Limited filed this suit against defendants Donnay International

S.A., International Brand Management Limited, and Brands Holdings Limited, alleging that

defendants breached a license agreement between the parties and tortiously interfered with

plaintiff's business.  Before the Court is defendants' motion to dismiss the complaint.  Defendants

move to dismiss based on the agreement's forum selection clause.  Defendants also argue that

plaintiff's claims are barred by res judicata because plaintiff previously filed a similar action, which was dismissed in 2015. For the following reasons, defendants' motion to dismiss is GRANTED, based on the forum selection clause.

## I. BACKGROUND

On September 30, 2015, plaintiff Donnay U.S.A. Limited ("plaintiff") filed this action in state court against defendants Donnay International S.A. ("Donnay International"), International Brand Management Limited ("IBML"), and Brands Holdings Limited ("BHL"), regarding the parties' license agreement. Plaintiff's counsel is also the president of the plaintiff. Defendants removed the case to this Court in October 2015.

## A. The Parties and the License Agreement

In March 2009, plaintiff entered into a license agreement with defendants Donnay International, IBML, and BHL. (Compl. ¶¶ 5–6, ECF No. 1-1.) The license provided plaintiff with the exclusive right to manufacture and sell "Donnay" brand golf and tennis apparel and accessories in the United States, Canada, Japan, and Korea, "in exchange for an aggressive minimum royalty payment." (Id. ¶¶ 6–7.)

The license agreement named plaintiff as licensee, Donnay International as licensor, IBML as agent for licensor, and BHL as guarantor of the licensor's obligations under the agreement. (Donnay Trademark License ("License") at 1, Ex. A to Compl., ECF No. 1-1.) Donnay International is registered in Belgium and has its principal place of business in Belgium. (Id.) IBML and BHL are both incorporated under the laws of England and Wales and have their registered offices in the United Kingdom. (Id.)

The license provided that plaintiff was entitled to sell products wholesale online through several websites. (Id. ¶ 2.5.) Under the license terms, defendant Donnay International or its

affiliates would own the website addresses and plaintiff would have administrative control over the websites for the term of the license.  (Id.)

According to the license, if plaintiff breached any material term of the agreement, the licensor reserved the right to terminate the agreement by giving written notice of the termination. (Id. ¶ 17.9.)  Upon termination, any proprietary rights held by plaintiff were to vest "absolutely, irrevocably and unconditionally in the licensor."  (Id. ¶ 18.1.)  Additionally, plaintiff agreed that upon the agreement's expiration or termination, or upon Donnay International's or IBML's request, plaintiff would transfer the internet domain names back to the licensor.  (Id. ¶ 2.7.)

The license included a forum selection clause, which states: "This Agreement shall be governed and construed in accordance with the laws of England and Wales and the parties for this purpose hereby submit to the exclusive jurisdiction of the courts of England and Wales." (Id. ¶ 26.9.)

## B. **The Parties' Business Relationship and the Amendment to the License Agreement**

From the beginning of the business relationship in 2009, the parties had disputes, including disagreements over plaintiff's administrative access to the website www.donnay.com. (Compl. ¶¶ 15–17.)  For example, after the parties agreed to the license, "[t]he licensor demanded that the plaintiff sign two supplemental agreements regarding the functionality of the website," to which plaintiff objected.[1]  (Id. ¶ 16.)  The disputes culminated in a disagreement over the minimum royalty payments due under the license.  (Id. ¶ 17.)  In 2012, the licensor "threatened to cancel the whole license agreement."  (Id. ¶ 18.)  Plaintiff maintains that the licensor did not have this power and only had the right to convert the agreement to a non-exclusive license.  (Id. ¶ 22.)  According to plaintiff, the licensor only had the right to convert—rather than terminate—the agreement

---

[1]  Throughout the complaint, the allegations generally refer to defendants as "licensor," without distinguishing among each defendant.  To remain consistent with plaintiff's allegations, I also use the term "licensor."

because one provision in the agreement states that "[i]n the event of a legal dispute arising or legal proceedings . . . between the parties relating to this Agreement, such grant shall automatically be amended to become non-exclusive."  (License ¶ 17.8; Compl. ¶¶ 6, 29.)

Because plaintiff's "enormous financial investment and business efforts had resulted in [plaintiff] being on the brink of vastly profitable future," the licensor proposed an amendment to the agreement in order to "gain[ ] control of [plaintiff]."  (Compl. ¶ 18.)  The proposed amendment required that plaintiff pay $1 million to the licensor within "a very short period of time," even though the licensor "knew full well that the licensee was experiencing financial difficulties . . . ." (Id. ¶¶ 19, 21; First Supplemental Deed to License Agreement ("Amendment") at ¶ 17.4, Ex. F. to Compl., ECF No. 1–2.)  Plaintiff signed the proposed amendment during the summer of 2012 because the licensor took advantage of plaintiff's financial difficulties and used "economic duress, compulsion, and coercion" to force plaintiff to agree.  (Compl. ¶¶ 21–23.)

The amendment included its own forum selection clause, providing:

This deed and any dispute or claim arising out of or in connection with it or its subject matter or formation (including non-contractual disputes or claims) shall be governed by and construed in accordance with the laws of England and Wales and the parties for this purpose hereby submit to the exclusive jurisdiction of the courts of England and Wales.

(Amendment ¶ 3.)

Initially, plaintiff avoided any breach of the amended agreement by making the payments required for August and September 2012.  (Compl. ¶ 24.)  However, plaintiff was unable to make the payments due in October 2012.  (Id.)  The "licensor" then attempted a "take-over" of the business, in which the licensor would receive a majority and controlling interest in plaintiff and plaintiff's principals would eventually be terminated.  (Id. ¶ 25.)  After plaintiff rejected this proposal, in January 2013, the "licensor purported to terminate" the parties' license agreement.

(Id. ¶ 26.)  The licensor's notice of termination letter refers to the "Trade Mark License Agreement dated 29 May 2012 between Donnay International SA ('Donnay'), International Brand Management Limited, Brands Holding [sic] Limited, and Donnay USA Limited ('Donnay USA') as amended ('Agreement.')."  (Id.; Notice of Termination, Ex. H to Compl., ECF No. 1-2.)

According to plaintiff, defendants' notice of termination should be construed to terminate only the amendment and not the license in its entirety because the notice specifically refers to the "Trade Mark License Agreement dated 29 May 2012 . . . as amended," rather than "any document executed in 2009."  (Compl. ¶¶ 26–27.)  In other words, plaintiff alleges that the original license agreement, without the 2012 amendment, is in "full force and effect as a non-exclusive license." (Id. ¶¶ 29–30.)  Consequently, plaintiff maintains that the licensor has breached the terms of the agreement and has "independently and separate and apart from the agreement, intentionally and tortiously interfered with licensee's active and prospective business relations and tortiously interfered with its prospective economic advantages."  (Id. ¶ 30.)

Specifically, plaintiff alleges that the licensor sent a letter to one of plaintiff's major customers, Tennis Warehouse, stating that Tennis Warehouse was "illegally dealing in the licensor's product."  (Id. ¶ 31.)  As a result, Tennis Warehouse put plaintiff's account "on hold," causing substantial loss of business.  (Id.)  Then, "either the licensor or one of its agents contacted licensee's manufacturer in China, Wu Yi Tan, and again alleged that the license agreement had been terminated . . . ."  (Id. ¶ 32.)  Plaintiff had to find a new manufacturer, but defendants are trying to seize these new shipments as well.  (Id.)

The complaint also alleges that defendants have taken down plaintiff's Facebook page and are directing internet traffic away from plaintiff's website, resulting in substantial harm to

5

plaintiff's business.  (Id. ¶ 33.)  Plaintiff alleges that defendants "will also act to seize goods in whatever way it can."  (Id. ¶ 35.)

Based on these facts, plaintiff asserts five claims.  First, plaintiff seeks a declaratory judgment that the original license is in effect and the 2012 amendment is null and void. (Id. ¶ 38.)  Second, plaintiff asserts a claim for business disparagement because defendants knowingly published writings calculated to prevent others from engaging in business with plaintiff. (Id. ¶ 40.)  Third, plaintiff alleges tortious interference with prospective advantage because defendants knowingly prevented plaintiff from entering into contracts with vendors, manufacturers, and customers. (Id. ¶ 43.)  Fourth, plaintiff brings a claim for tortious interference with existing contracts because defendants told other parties that the license agreement had been terminated.  (Id. ¶ 46.)  Fifth, and finally, plaintiff asserts a claim for tortious destruction of goodwill because defendants diverted internet traffic away from plaintiff's websites.  (Id. ¶ 49 (misnumbered ¶ 40).)

The defendants have moved to dismiss this action, based on the forum selection clauses in the original license and the amendment.   For the reasons set forth below, defendants' motion to dismiss is granted.[2]

## II. DISCUSSION

### A. Legal Standard

"'[T]he appropriate way to enforce a forum-selection clause pointing to a state or foreign forum is through the doctrine of forum non conveniens.'"  Martinez, 740 F.3d 211, 217 (2d Cir. 2014) (quoting Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas, 134 S. Ct. 568, 580 (2013)).  In determining whether to dismiss a case based on a forum selection clause, the

---

[2]  Because defendants' motion is granted based on the forum selection clause, it is unnecessary to discuss res judicata as an alternative ground for dismissal.

district court may rely solely on the pleadings and affidavits unless disputed factual questions exist that would necessitate an evidentiary hearing.  Id. at 217–18.

A forum selection clause is presumed valid and enforceable, unless the resisting party can show that enforcement would be unreasonable under the circumstances or that the forum selection clause itself is invalid.  Magi XXI, Inc. v. Stato della Citta del Vaticano, 714 F.3d 714, 720–21 (2d Cir. 2013).  Courts "give 'substantial deference' to the forum selected by the parties, particularly where this choice 'was made in an arm's-length negotiation by experienced and sophisticated businessmen.'"  Id. at 721 (quoting New Moon Shipping Co. v. MAN B & W Diesel AG, 121 F.3d 24, 29 (2d Cir. 1997)).

Courts apply a four-part analysis in determining whether to enforce a forum selection clause.  Initially, the court considers: (1) "whether the clause was reasonably communicated to the party resisting enforcement"; (2) whether the clause is mandatory, rather than permissive; and (3) "whether the claims and parties involved in the suit are subject to the forum selection clause."  Id.  If the first three inquiries are answered in the affirmative, the clause is presumptively enforceable.  Id.  Finally, the court asks: (4) "whether the resisting party has rebutted the presumption of enforceability by making a sufficiently strong showing that 'enforcement would be unreasonable or unjust, or that the clause was invalid for such reasons as fraud or overreaching.'"  Id. (quoting Phillips v. Audio Active Ltd., 494 F.3d 378, 383–84 (2d Cir. 2007)).

"The overriding framework governing the effect of forum selection clauses in federal courts . . . is drawn from federal law."  Martinez v. Bloomberg LP, 740 F.3d at 217.  Thus, to answer whether a forum selection clause is enforceable, i.e., step four in the analysis, courts apply federal law.  Id.; see also Phillips, 494 F.3d at 383–84; Amto, LLC v. Bedford Asset Mgmt., LLC, No. 14-CV-9913, 2016 WL 1030141, at *5 (S.D.N.Y. Mar. 10, 2016).  "In answering the

interpretive questions posed by parts two and three of the four-part framework, however, [courts] normally apply the body of law selected in an otherwise valid choice-of-law clause." Martinez, 740 F.3d at 217–18.

**B. Analysis**

    **1. Threshold Issues**

    Before discussing the application of the four-part framework, there are several threshold issues to be addressed.

    First, defendants moved to enforce the forum selection clause pursuant to Federal Rule of Civil Procedure 12(b),[3] rather than the doctrine of forum non conveniens. Neither party addresses the effect of the Supreme Court's decision in Atlantic Marine and the proper method to enforce a forum selection clause. Prior to the Supreme Court's decision in Atlantic Marine, no precedential authority "specifically designated a single clause of Rule 12(b)—or an alternative vehicle—as the proper procedural mechanism to request dismissal of a suit based upon a valid forum selection clause." TradeComet.com LLC v. Google, Inc., 647 F.3d 472, 475 (2d Cir. 2011) (quoting Asoma Corp. v. SK Shipping Co., Ltd., 467 F.3d 817, 822 (2d Cir. 2006)) (internal quotation marks omitted); see Martinez, 740 F.3d at 217 (explaining that in Atlantic Marine, the Supreme Court resolved the "uncertainty" as to the proper procedural mechanism to enforce a forum selection clause). However, "the Supreme Court's decision in Atlantic Marine merely clarified the procedural vehicle through which forum selection clauses are enforced and did not significantly alter the substantive analysis of the clauses." Accordingly, I will follow the lead of other courts and construe defendants' motion to dismiss as one proceeding under the doctrine of forum non conveniens. See Amto, 2016 WL 1030141, at *5 n.8 (deeming a motion to enforce a forum

---

[3] Defendants did not invoke a specific provision of Rule 12(b). (See Defs.' Mem. at 5–6, ECF No. 17.)

selection clause under Rule 12(b)(3) to be a motion based on forum non conveniens); see also Martinez, 740 F.3d at 216 (explaining that the Supreme Court's decision in Atlantic Marine clarified the "proper procedural vehicle for enforcing a forum selection clause" but did not "alter the materials on which a district court may rely in granting a motion to dismiss based on a forum selection clause").

Second, as explained above, a forum selection clause is interpreted according to the law selected in a valid choice-of-law provision. See Martinez, 740 F.3d at 217–18; Phillips, 494 F.3d at 386. However, neither party cites English law in their briefs; instead, they rely solely on federal law in addressing the scope of the forum selection clause. Therefore, the parties have impliedly consented to application of general contract law principles and federal precedent to the questions of interpretation at parts two and three of the analysis. See Phillips, 494 F.3d at 386 (citing Motorola Credit Corp. v. Uzan, 388 F.3d 39, 61 (2d Cir. 2004); John Wyeth & Brother Ltd. v. CIGNA Int'l Corp., 119 F.3d 1070, 1074 (3d Cir. 1997)) (finding that where the parties' briefings did not cite English law, despite an English choice-of-law provision, the court would apply "general contract law principles and federal precedent to discern the meaning and scope of the forum clause").

Third, plaintiff contends that only the forum selection clause in the original license is relevant to the analysis. In the complaint, plaintiff alleges that defendants' notice of termination, given in January 2013, terminated only the 2012 amendment. Therefore, plaintiff contends that the original license is the sole agreement in effect. Although plaintiff suggests that the amendment's forum selection clause would not survive the amendment's termination, plaintiff provides no authority to support this position. Moreover, plaintiff's argument on this point is irrelevant because both clauses are enforceable and encompass all of plaintiff's claims.

### 2. The Four-Part Analysis

The original license provides: "This Agreement shall be governed and construed in accordance with the laws of England and Wales and the parties for this purpose hereby submit to the exclusive jurisdiction of the courts of England and Wales." (License ¶ 26.9.) The amendment's clause states:

> This deed and any dispute or claim arising out of or in connection with it or its subject matter or formation (including non-contractual disputes or claims) shall be governed by and construed in accordance with the laws of England and Wales and the parties for this purpose hereby submit to the exclusive jurisdiction of the courts of England and Wales.

(Amendment ¶ 3.)

Under the four-part analysis, both forum selection clauses are presumptively enforceable. At the first step, both the original license's clause and the amendment's clause were reasonably communicated, in clear and unambiguous language, through the contracts that plaintiff signed. See Effron v. Sun Line Cruises, Inc., 67 F.3d 7, 9 (2d Cir. 1995). Second, both clauses state that the "agreement" or "deed" "shall be governed and construed in accordance with the laws of England and Wales and the parties for this purpose hereby submit to the exclusive jurisdiction of the courts of England and Wales." (License ¶ 26.9; Amendment ¶ 3 (emphases added).) "A forum selection clause is viewed as mandatory when it confers exclusive jurisdiction on the designated forum or incorporates obligatory venue language." Phillips, 494 F.3d 378, 386 (2d Cir. 2007); cf. John Boutari & Son, Wines & Spirits, S.A. v. Attiki Importers & Distributors Inc., 22 F.3d 51, 53 (2d Cir. 1994) (finding a clause was not mandatory when it did not contain specific language of exclusion). Plaintiff has failed to raise any argument that this language is permissive, rather than mandatory. There is also no dispute that all the parties involved in this suit were parties to the agreement and, thus, subject to the clause.

At the third step, the amendment's clause clearly encompasses all of plaintiff's claims, including plaintiff's tort causes of action.  Whether the original license's clause also encompasses all of plaintiff's claims warrants some discussion.  Plaintiff argues that the forum selection clause in the original license excludes tort claims by implication because of the additional language in the amendment's clause.   However, courts interpret forum selection clauses "broadly," and have consistently held that they "are not restricted to pure breaches of the contracts containing the clauses." TradeComet.com LLC v. Google, Inc., 693 F. Supp. 2d 370, 378 (S.D.N.Y. 2010), aff'd in part, 647 F.3d 472 (2d Cir. 2011), and aff'd in part, 435 F. App'x 31 (2d Cir. 2011).  Therefore, "[a] forum selection clause should not be defeated by artful pleading of claims not based on the contract containing the clause if those claims grow out of the contractual relationship, or if 'the gist' of those claims is a breach of that relationship." Direct Mail Prod. Servs. Ltd. v. MBNA Corp., No. 99-CV-10550, 2000 WL 1277597, at *6 (S.D.N.Y. Sept. 7, 2000) (quoting Anselmo v. Univision Station Grp., Inc., No. 92-CV-1471, 1993 WL 17173, at *2 (S.D.N.Y. Jan. 15, 1993)) (internal quotation marks omitted); see also NY Metro Radio Korea, Inc. v. Korea Radio USA, Inc., No. 07-CV-4123, 2008 WL 189871, at *4 (E.D.N.Y. Jan. 18, 2008).

Here, the language of the original forum selection clause encompasses plaintiff's tort claims.  See Direct Mail, 2000 WL 1277597, at *3, *6 (finding that a clause encompassed copyright and tort claims when the clause stated that the "Agreement shall be governed by and construed in accordance with English law and the parties hereto agree that the English courts shall have exclusive jurisdiction"); Ronar, Inc. v. Wallace, 649 F. Supp. 310, 312 (S.D.N.Y. 1986) (finding that a clause that dictated "[t]he courts at Tirschenreuth, Federal Republic of Germany, shall have jurisdiction and venue" applied to both contract and tort claims).  In Direct Mail, the court held that an essentially identical forum selection clause encompassed the plaintiff's tort and

copyright claims.  There, the parties had entered into an agreement, by which the plaintiff would create databases of prospective customers for one of the defendants.  Direct Mail, 2000 WL 1277597, at *1.  The forum selection clause provided that the "'Agreement shall be governed by and construed in accordance with English law and the parties hereto agree that the English courts shall have exclusive jurisdiction.'"  Id. at *3.  The plaintiff alleged that its databases were copied and transmitted, in violation of the parties' arrangements, and asserted claims against several defendants for copyright infringement, misappropriation of trade secrets, and intentional interference with business relations.  Id. at *1–2.  Although the plaintiff did not assert contractual claims, all of the plaintiff's claims still fell within the scope of the forum selection clause because they depended on "rights and duties that must be analyzed by reference to the contractual relationship."  Id. at *6.  Specifically, the court reasoned that because the agreement had given the defendant a license to use the plaintiff's databases, whether or not the defendant acted wrongfully with respect to those databases required reference to the rights and duties in the agreement.  Id. Thus, the plaintiff's tort claims rested on the premise that the defendant's conduct was unauthorized under the agreement.  Id.

Plaintiff provides no case law suggesting a narrower scope for the clause at issue here. Here, all five of plaintiff's claims require reference to the parties' rights and duties under the license.  First, plaintiff requests a declaratory judgment that the original license agreement is in effect and the 2012 amendment is null and void.  This is clearly a contract claim, which requires interpretation of the agreement's provisions regarding termination.  Similarly, all of plaintiff's tort claims involve defendants' statements that the license agreement is no longer in effect and defendants' alleged interference with plaintiff's customers, manufacturers, and websites.  These claims all require reference to the agreement to determine whether defendants gave proper notice

of termination and whether defendants acted within their post-termination rights under the agreement. Moreover, plaintiff has not cited to any authority supporting the theory that the original license's clause impliedly excludes tort claims because the amendment's clause contains additional language. Therefore, plaintiff's claims fall within the scope of even the original license's clause, and both forum selection clauses are presumptively enforceable.

Plaintiff's arguments to rebut the presumption of enforceability fail.

First, plaintiff argues that the forum selection clause is unenforceable, based on fraud and overreaching. Notably, these arguments have little bearing on the forum selection clause in the original license agreement because plaintiff presents these arguments almost exclusively in the context of the 2012 amendment. Plaintiff argues he only agreed to the amendment because defendants threatened to terminate the agreement if he did not agree. (Pl.'s Mem. at 6, ECF No. 18.) Plaintiff has also alleged that defendants had no right to terminate the agreement. Plaintiff's arguments are insufficient to rebut the presumption of enforceability.

"'Fraud in the inducement of [an agreement], as distinct from fraud in the inducement of the forum selection clause specifically, is insufficient to defeat the forum selection clause.'" Dollar Phone Access, Inc. v. AT & T Inc., No. 14-CV-3240, 2015 WL 430286, at *8 (E.D.N.Y. Feb. 2, 2015) (quoting J.B. Harris, Inc. v. Razei Bar Indus., Ltd., 37 F. Supp. 2d 186, 191 (E.D.N.Y. 1998), aff'd, 181 F.3d 82 (2d Cir.1999)); see Scherk v. Alberto-Culver Co., 417 U.S. 506, 519 n.14 (1974). Plaintiff argues that he was fraudulently coerced into entering the amendment, without any specific allegations about the forum selection clause's inclusion. Therefore, plaintiff's fraud argument fails.

Plaintiff's argument based on overreaching also fails. Plaintiff generally argues that he would be deprived of his day in court if defendants' choice of forum were enforced. Plaintiff

13

presents an additional overreaching argument with respect to the amendment. Specifically, plaintiff alleges that the amendment is invalid for overreaching because it was a contract of adhesion, and plaintiff had no reasonable alternative other than agree to it. However, courts have enforced forum selection clauses, even when their terms were not negotiable and where individuals lacked any bargaining power. See TradeComet.com LLC v. Google, Inc., 435 F. App'x 31, 36 (2d Cir. 2011) (citing Carnival Cruise Lines, Inc. v. Shute, 499 U.S. 585, 593 (1991)); see also 5381 Partners LLC v. Shareasale.com, Inc., No. 12-CV-4263, 2013 WL 5328324, at *9 (E.D.N.Y. Sept. 23, 2013) ("Although plaintiff argues that the Merchant Agreement is a 'classic contract of adhesion' courts have routinely upheld forum selection clauses that were not the product of an arms-length negotiation." (citation omitted)). Moreover, as described above, plaintiff's claims are all covered by the forum selection clause in the original agreement—an agreement for which plaintiff has presented no viable claim of overreaching to rebut the presumption of enforceability. See TradeComet.com, 435 F. App'x at 36–37 (finding that claims of overreaching regarding the defendant's modification of a forum selection clause were meritless because the modification was clearly related to matters that the parties had already addressed in their previous agreements, i.e., the matter of where the parties would litigate). Additionally, defendants are all companies in either the United Kingdom or Belgium and reasonably seek to enforce a forum selection clause to litigate plaintiff's claims in their own forum. See 5381 Partners, 2013 WL 5328324, at *9 (noting that forum selection clauses generally are not unenforceable for overreaching where they designate the defendant's principal place of business as the forum).

Plaintiff's efforts to invalidate the amendment's forum selection clause based on economic duress also fail. Plaintiff alleges that he entered into the amendment only after defendants' threatened to terminate the license if he did not. However, defendants' threats to terminate the

14

original agreement would only constitute unlawful duress if defendants were acting outside of their legal rights.  See Interpharm, Inc. v. Wells Fargo Bank Ass'n, 655 F.3d 136, 142–43.  Plaintiff argues that defendants had no right to terminate the original agreement.  In support of this allegation, plaintiff selectively cites to a provision that merely provides that in the event of a legal dispute, the license would become non-exclusive.  (License ¶ 17.8.)  Plaintiff, however, simply ignores the license's provisions that explicitly allow the licensor to provide plaintiff with a notice of termination, at which point all copyright, intellectual property, and proprietary rights held by plaintiff would vest "absolutely, irrevocably and unconditionally in the licensor." (Id. ¶¶ 17.9, 18.1)  Because defendants had the right to terminate the license under the original agreement, plaintiff has not shown that the amended agreement was the result of unlawful duress. Finally, plaintiff's economic duress argument concerning the amended agreement has no effect on the enforceability of the original license's forum selection clause.  Thus, plaintiff's arguments based on overreaching fail.

Plaintiff also argues that defendants should be estopped from enforcing the forum selection clause here because in plaintiff's previous lawsuit against defendant Donnay International, defendant consented to this Court's jurisdiction for purposes of its motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.  (See Opinion and Order in Donnay USA v. Donnay International, S.A. at 7–9, 14-CV-6095 (E.D.NY. July 27, 2015), ECF No. 14.) However, the doctrine of judicial estoppel only applies when a party takes a position contrary to one taken in an earlier proceeding, and where the court in the prior proceeding accepted the claim by rendering a favorable decision.  Simon v. Safelite Glass Corp., 128 F.3d 68, 71–72 (2d Cir. 1997).  In the prior action, the forum selection clause was never raised as an issue, and, therefore,

the court never accepted any claim regarding the clause in its decision. Plaintiff cites to no authority that shows judicial estoppel applies under these circumstances.

Finally, plaintiff generally argues that enforcement of the clause would be unjust. Plaintiff's counsel explains that although he is an attorney, he is not experienced and cannot afford to litigate abroad.  However, the costs of litigation in a foreign country are insufficient to overcome enforcement of a forum selection clause.  See, e.g., Effron, 67 F.3d at 11 (noting that a forum is not inconvenient solely because it requires travel); Phillips, 494 F.3d at 393 (upholding forum selection clause in England because although litigation may be costly or difficult abroad, it was neither impossible nor unforeseeable, given that the plaintiff had agreed to litigate in England). Plaintiff's counsel, as a businessman and an attorney, cannot now be excused from the terms to which he agreed.  Therefore, enforcement of the forum selection clause here is not unfair.

## III. CONCLUSION

I have considered plaintiff's remaining arguments and find that they are without merit.[4] For the reasons set forth above, defendants' motion to dismiss is granted, based on forum non conveniens, and the case is dismissed in its entirety.  The Clerk of Court is directed to enter judgment accordingly and close the case.


**SO ORDERED.**

Dated: September 1, 2016
Central Islip, New York                                    _____/s/ (JMA)_____
                                                           JOAN M. AZRACK
                                                           UNITED STATES DISTRICT JUDGE

---

[4]  The Court also denies plaintiff's requests for an injunction, specific performance of the contract, and a hearing under Federal Rule of Civil Procedure 12(d), which appear in plaintiff's opposition brief.